```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

LOGAN TODD                          :
                                    :
              Plaintiff,            :
                                    :      Case No. 2:13-cv-05
      v.                            :
                                    :
CHUCK HATIN, ANDREW PALLITO,        :
WADE JOHNSON, and JEANNE JEAN,      :
                                    :
              Defendant.            :
                                    :
```

## ORDER AND OPINION

This is an action brought by Logan Todd to recover damages from Chuck Hatin, Andrew Pallito, Wade Johnson, and Jeanne Jean ("the Defendants"), Vermont Department of Corrections officials, under 42 U.S.C. § 1983 for violations of Logan Todd's Fourteenth and Eighth Amendment rights.  The complaint stems from Logan Todd's imprisonment for nearly fifteen months past the date he was supposed to be released from prison.  Before the Court is the Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion, EFC No. 14, is granted with regard to Logan Todd's Fourteenth Amendment claims, but denied with regard to Logan Todd's Eighth Amendment claims.

## BACKGROUND

Logan Todd was improperly and unnecessarily incarcerated for nearly fifteen months.  Compl. ¶ 11.  On July 27, 2010,

1

Vermont Superior Court Judge Rainville found that Logan Todd violated conditions of his probation and imposed a "fully suspended" sentence.  *Id.* ¶ 10.  However, Judge Rainville also ordered that Logan Todd remain in prison until he obtained housing approved by his probation officer, Defendant Chuck Hatin.  Pl.'s Resp. to Mot. to Dismiss (hereinafter "Pl.'s Resp.") at 1.  Hatin attended the hearing and was aware of Judge Rainville's findings.  Contrary to Judge Rainville's direction at trial, the court clerk issued a mittimus revoking Logan Todd's probation and ordering that he serve his underlying sentence of two to four and a half years in prison.  Compl. ¶ 11.

After the sentencing hearing, Logan Todd's father, Bill Todd, worked with Hatin to find approved housing for him.  Pl.'s Resp. at 3.  Eventually, on September 28, Bill Todd informed Hatin that he had rented an apartment in St. Albans for Logan Todd, which Hatin had previously approved.  Compl. ¶ 12.

Contrary to the expectations of Bill Todd and Hatin, Logan Todd was not immediately released.  Bill Todd contacted Hatin about why Logan Todd was still being held.  On October 7, Hatin responded, "I am being told there is a problem with [Logan Todd's] court paperwork, I am attempting to rectify the issue with the Deputy State's Attorney.  You may want to contact Logan's defense attorney to assist us in straightening things

2

out." Pl.'s Resp. at 4. Bill Todd forwarded Hatin's e-mail to Logan Todd's attorney, who also contacted the State's Attorney. Def.'s Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss (hereinafter "Def.'s Reply"), Ex. 1-135.

Efforts to remedy the situation seemed to be progressing in early October of 2010. On October 11, Logan Todd's attorney assured Bill Todd that "we are finally getting some assistance directly from the court." *Id.* at Ex. 1-136. But after an e-mail from Bill Todd to Hatin on October 15 and a phone call from Hatin to Bill Todd on October 19, there is no indication of any effort to secure Logan Todd's release. Pl.'s Resp., Ex. 8.

Ten months later, on August 15, 2011, Logan Todd wrote a letter to Governor Shumlin claiming that he was being unlawfully incarcerated. Compl. ¶ 17. The letter was referred to Defendant Andrew Pallito, Commissioner of the Vermont Department of Correction ("DOC"), who assigned the letter to Defendant Wade Johnson, a DOC employee. Johnson responded to Logan Todd that Defendant Jeanne Jean, a DOC caseworker, would speak with him about his situation. *Id.* ¶¶ 18-19. There is no indication that a conversation ever occurred. *Id.* ¶ 19.

With the assistance of a new attorney, Logan Todd filed a habeas corpus petition in Vermont Superior Court on December 15, 2011. *Id.* ¶ 20. At the habeas hearing, Judge Kupersmith reviewed the transcript from the sentencing hearing and

3

determined that Judge Rainville intended for Logan Todd to be released upon obtaining approved housing. Compl. ¶ 22; Pl.'s Resp., Ex. 3. On December 27, 2011 Judge Kupersmith granted the habeas petition, and Logan Todd was released from prison. Compl. ¶ 26.

## DISCUSSION

I.  Standard of Review

To state a claim for relief sufficient to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A section 1983 claim will survive a Rule 12(b)(6) motion to dismiss when the complaint alleges: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Tayor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330 (1986). The Court must construe the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, but an assumption of truth is not afforded to legal conclusions. *Ashcroft*, 556 U.S. at 678.

II. The Fourteenth Amendment Claim

4

No State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A section 1983 claim based on the Fourteenth Amendment requires that the plaintiff show that he was denied procedural due process. *Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of law.") (internal quotation marks omitted).

An inmate is deprived of his liberty when he is detained beyond the expiration of his sentence. *Calhoun v. New York Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993). Prison officials must provide an inmate with meaningful procedures to challenge a sentence when prison officials are responsible for calculating or interpreting an inmate's sentence. *Haygood v. Younger*, 769 F.2d 1350, 1356 (9th Cir. 1985) ("[D]ue process in this case required the state to provide Haygood with a meaningful hearing at a meaningful time."). However, where a sentence is based on a court order, the process due is judicial process. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986) ("The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution."). Post-

5

deprivation procedures can satisfy the procedural due process requirement where it is impractical to provide pre-deprivation procedures to challenge the deprivation.  *Parratt*, 451 U.S. at 541.

The Defendants are not liable under section 1983 for a Fourteenth Amendment violation because they did not deprive Logan Todd of procedural due process.  Challenging the validity of Logan Todd's mittimus required judicial intervention and was properly accomplished through post-deprivation judicial process.  At all times that process was available to Logan Todd under Vermont law.  *See* Vt. R. Crim. P. 36 ("Clerical mistakes in judgments, orders, or other parts of the record . . . may be corrected by the court at any time of its own initiative or on the motion of any party . . . .").  Because Logan Todd was provided adequate process to remedy a judicial error, Logan Todd was not deprived of procedural due process.[1]

Even if Logan Todd could show that he was denied due process of law, the Defendants are protected by quasi-judicial immunity with respect to the Fourteenth Amendment claim because that claim is predicated on the Defendants' conduct in carrying

---

[1] It is instructive to contrast this case with *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007).  In *Russo*, police officers failed to turn over a video tape that proved the Plaintiff's innocence.  As a result, the Plaintiff was detained for 217 days while awaiting trial.  The officers' failure to produce the video denied the Plaintiff due process by obstructing the Plaintiff's ability to challenge his pre-trial detention.  There are no allegations in here that the Defendants obstructed Logan Todd's ability to make a Rule 36 motion to correct the erroneous mittimus.

out a facially valid mittimus.  Prison officials cannot be held liable under section 1983 for claims flowing from the execution of a facially valid court order.  *See, e.g., Engebertson v. Mahoney*, No. 10-35626, 2013 WL 3242512 at *4-5 (9th Cir. June 28, 2013)("[W]e hold that prison officials . . . who are charged with executing facially valid court orders enjoy absolute immunity from [section] 1983 liability for conduct prescribed by those orders."); *Figg v. Russell*, 433 F.3d 593, 598-99 (8th Cir. 2006)("[J]ailers and wardens are absolutely immune from damages flowing from the fact of a prisoner's incarceration, when the incarceration occurs pursuant to a facially valid order of confinement.") (internal quotation marks omitted); *Francis v. Lyman*, 216 F.2d 583, 588-89 (1st Cir. 1954) ("The privilege of the jailor to impose confinement . . . is, we think, quite as time-honored in the Anglo-American common law as is the immunity of the members of the legislature and of judges."); *Ravenscroft v. Casey*, 139 F.2d 776, 778 (2d Cir. 1944).

Quasi-judicial immunity derives from the absolute immunity of judicial officers for "acts committed within their judicial jurisdiction," and benefits the public by ensuring the efficient and independent function of the judicial branch.  *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *see also Butz v. Economou*, 438 U.S. 478, 512 (1978) (explaining that judicial immunity covers officials performing duties that are comparable to functions for

7

which judges are immune).  The integrity of the judicial process is protected when officials can rely on facially valid court orders and when judges are certain that their orders will be enforced.  *See Patterson v. Von Reisen*, 999 F.2d 1235, 1240-41 (8th Cir. 1993).  A court's error is properly corrected on appeal, not attacked collaterally through civil litigation. *Pierson*, 386 U.S. at 554; *see also Valdez v. Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) ("[Prison] [o]fficials . . . must not be required to act as a pseudo-appellate courts scrutinizing the orders of judges.").

Despite potential unfairness to plaintiffs, requiring prison officials to second-guess a court order when questions arise regarding its validity would place prison officials in a dilemma.  *See Valdez*, 878 F.2d at 1289.  On the one hand, public officials could face section 1983 liability if an order is later found to be erroneous.  On the other hand, "[p]ublic officials . . . who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their office." *Scheuer v. Rhodes*, 416 U.S. 232, 241-42 (1974).

In *Dupree v. City of New York*, an inmate was jailed for a parole violation and subsequently detained for two months beyond the expiration of his sentence because the parole board was unable to schedule a final parole revocation hearing prior to the expiration of the sentence.  418 F. Supp. 2d 555, 556-57

(S.D.N.Y. 2006). Despite the fact that the inmate was incarcerated for two months beyond the expiration of his sentence, the inmate's section 1983 suit against the New York City Department of Corrections ("NYC DOC") failed because the NYC DOC "lawfully detained [the plaintiff] pursuant to a facially valid warrant issued by the New York State Division of Parole." *Id.* at 559. Similarly, in *Francis*, the First Circuit extended immunity to former commissioners of corrections, supervisors of correctional institutions, and parole officers serving during the an inmate's detention on the grounds that those officials were following valid court orders and had no legal duty or authority to order the inmate's release, even though the detention was later found to be erroneous. 216 F.2d at 585, 86, 88.

Logan Todd acknowledges that on its face the mittimus revoked his probation and dictated that he be held in prison. Compl. ¶ 11. As in *Dupree*, the Defendants merely followed a facially valid mittimus. And as in *Francis*, the Defendants did not have the authority to order Logan Todd's release in the face of a facially valid mittimus. *See id.* at 585 ("The Commissioners of Corrections had no function, like that of the Superior Court on a writ of habeas corpus, to go behind said judicial order of commitment to inquire into the validity of the procedure leading up to its issuance."). Because Logan Todd was

9

incarcerated on the basis of a facially valid mittimus, the Defendants are immune from section 1983 liability for claims predicated on the execution of the mittimus.

III. The Eighth Amendment Claim

"To establish an Eighth Amendment violation, an inmate must show: (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks omitted).  In regard to the first element, "imprisonment beyond one's term constitutes punishment within the meaning of the [E]ighth [A]mendment." *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989); *Wright v. Kane*, No. 94 Civ. 3836, 1997 WL 746457, at *4 (S.D.N.Y. Dec. 2, 1997) ("Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of deliberate indifference").  In regard to the second element, the Supreme Court has defined deliberate indifference as a state of mind more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Deliberate indifference requires that "the official must be both aware of the facts from which the inference could be drawn that a substantial risk of

10

serious harm exists, and he must also draw that inference." *Id.* at 836-37.

Courts apply a three part-inquiry to evaluate whether a defendant's conduct violates the Eighth Amendment: (1) did the defendant have knowledge of the fact the plaintiff was at risk of unwarranted punishment, (2) did the defendant fail to act or take ineffectual actions, and (3) was there a causal connection between the defendants failure to act and the infliction of unwarranted punishment? *Sample*, 885 F.2d at 1110; *see, e.g.*, *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007)(applying the *Sample* test).

The complaint alleges sufficient facts to support the inference that Hatin was deliberately indifferent and violated Logan Todd's Eighth Amendment rights.  First, Hatin's knowledge that Logan Todd was at risk of unwarranted punishment is predicated on his presence at the sentencing hearing where Judge Rainville indicated that Logan Todd was to be released from prison upon obtaining approved housing.  Based on his understanding from the hearing, Hatin actively assisted Bill Todd in finding and approving housing for Logan Todd so that Logan Todd could be released from prison.  In so doing, Hatin acted in a manner consistent with his knowledge that Logan Todd should be released upon securing approved housing.  Second, it is reasonable to infer that after Hatin learned of the error in

11

the mittimus his efforts to secure Logan Todd's release were ineffectual based on the fact that Logan Todd spent nearly fifteen more months in jail.  Finally, it is plausible that Hatin's allegedly ineffectual efforts were a cause of Logan Todd's prolonged detention.  It is reasonable to infer that Logan Todd would not have been held as long as he was if Hatin requested an amended mittimus or more effectively communicated his knowledge regarding Logan Todd's sentence to others in the corrections system.

As with Hatin, the complaint alleges facts to support the allegation that Pallito, Johnson, and Jean had knowledge of Logan Todd's situation.  According to the complaint, Logan Todd's letter to Governor Shumlin passed through the hands of each of the Defendants.  The Defendants allegedly had access to the Logan Todd's file, which included Todd's plea agreement and Hatin's notes, both of which stated he was to remain on probation.  Pl.'s Resp. at 11.  The Defendants allegedly failed to inspect Logan Todd's file despite the evidence of the mistaken mittimus.  Additionally, the promised follow-up by Jean is alleged to never have occurred.  At this stage in the proceedings, the Court can infer that this failure to look into Logan Todd's complaint constituted deliberate indifference and was a cause of his prolonged detention.

In summary, the complaint adequately alleges that the all Defendants were deliberately indifferent and violated Logan Todd's Eighth Amendment rights by virtue of (1) their knowledge about his unwarranted imprisonment, (2) their inaction or ineffectual action to ensure Logan Todd was not wrongfully imprisoned between end of September of 2010 and December 27, 2011, and (3) the connection between the Defendants' inactions or ineffectual actions and the time that Logan Todd was wrongly incarcerated.  *See Sample*, 885 F.2d at 1110.

The Defendants are not entitled to quasi-judicial immunity for the Eighth Amendment claim.  Quasi-judicial immunity is available to non-judicial officers when they are engaged in conduct that is "functionally comparable" to the duties of judicial officers.  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993); *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (noting that prosecutors are entitled to quasi-judicial immunity for activities related to the judicial phase of a prosecution, but only entitled to qualified immunity "when performing investigatory or administrative functions").  Quasi-judicial immunity is not appropriate when an allegation against a prison official is "not an attack on the judge's sentence, but on the manner of executing that sentence."  *Schneider v. Will*, 366 Fed. Appx. 683, 685 (7th Cir. 2010).

Unlike the Fourteenth Amendment claim, which is based on the Defendants conduct in executing the mittimus, the Eighth Amendment claim is based on the Defendants deliberate indifference to a known and specific harm suffered by Logan Todd.  The Defendants' decision to not adequately assist Logan Todd when the Defendants allegedly knew that their failure to do so would result in Logan Todd's unwarranted detention is not conduct that is functionally comparable to the duties of a judicial officer.  The Defendants' alleged failure to seek an amended mittimus or more effectively communicate their knowledge to others in the corrections system are decisions made within their discretion as executive branch officials and not governed by a court order.  Therefore, quasi-judicial immunity does not protect the Defendants from the Eighth Amendment claim.

The Defendants, however, urge the Court to grant their motion to dismiss on the basis of qualified immunity.  Qualified immunity requires that the defendant show that either: (1) the plaintiff has not suffered a violation of his rights; or (2) the violated right was not clearly established at the time of the violation.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (allowing courts discretion in how to employ the two-part qualified immunity analysis in *Saucier v. Katz*, 533 U.S. 194 (2001)).  A defendant asserting qualified immunity faces a more stringent standard at the pleadings stage because "the plaintiff

14

is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The question here is whether the facts alleged give rise to a plausible inference that the Defendants' failure to act to secure Todd's release violated clearly established law.

A right is not clearly established "if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). However, conduct does not have to be explicitly held unconstitutional to be clearly established as such "if decisions by this or other circuit courts clearly foreshadow a particular ruling on the issue." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citations omitted). The inquiry into whether a defendant's conduct is clearly established as an unconstitutional violation of a right "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Drawing all reasonable inferences in Logan Todd's favor, the Court finds that qualified immunity is not appropriate at this stage in the proceedings.  Decisions in other circuit courts establish that corrections officials have a duty to take actions to ensure an inmate is not detained beyond his sentence when that official knows or should know that the detention is unwarranted and understands that the situation will persist without his intervention.  *Sample*, 885 F.2d at 1110 ("[I]f a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely [deliberate indifference] will be present.").

The Third Circuit found that a corrections official was deliberately indifferent for failing to investigate an alleged sentencing error when "[i]t [was] not disputed that [he] had the duty, believed he had the duty, and was understood by prisoners to have the duty expeditiously to unravel sentencing problems." *Sample*, 885 F.2d at 1112.  Similarly, the Ninth Circuit found that a prison official's failure to investigate an inmate's claim that his sentence was wrongly calculated was a breach of that official's duty, which was "clearly established by virtue of the Bureau of Prisons regulations and policies."  *Alexander*

16

*v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1989).  Courts in the Second Circuit have also acknowledged that failure to act in the face of knowledge of an inmate's wrongful detention constitutes an Eighth Amendment violation.  *See, e.g., Rivera v. Carroll*, No. 07 Civ. 7847, 2009 WL 2365240, at *5 (S.D.N.Y. Aug. 3, 2009) ("[I]t cannot be said that reasonable officials would believe it permissible to allow Plaintiff to remain in custody beyond his release date."); *Brown v. Coughlin*, 704 F. Supp. 41, 45 (S.D.N.Y. 1989) ("Failure to act while [an inmate] remained imprisoned beyond his release date is not conduct protected by qualified immunity.").

     Logan Todd has alleged facts showing that the Defendants had knowledge that he should have been released upon obtaining approved housing.  It also can be inferred that the Defendants understood that their failure to act subjected Logan Todd to continued unwarranted incarceration based on the Defendants' roles in the prison system and the fact that each day the Defendants did not act Logan Todd remained in prison.  After discovery, the facts underlying the Eighth Amendment claim may be established, and the Defendants may raise the issue of qualified immunity again.  *See McKenna*, 386 F.3d at 436.  At this stage, however, the allegations suggest that the Defendants' conduct may be unconstitutional under the duty established by *Sample* and *Perrill*.

## CONCLUSION

The motion to dismiss, EFC No. 14, is granted in part and denied in part.  The motion is granted with respect to Logan Todd's section 1983 claim for violation of his Fourteenth Amendment rights, but denied with respect to Logan Todd's section 1983 claim for the violation of his Eighth Amendment rights.

Dated at Burlington, in the District of Vermont, this 5th day of August, 2013.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
