# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

LOGAN TODD                          :
                                    :
                    Plaintiff,      :
                                    :    Case No. 2:13-cv-05
          v.                        :
                                    :
CHUCK HATIN, ANDREW PALLITO,        :
WADE JOHNSON, and                   :
RICHARD BYRNE                       :
                                    :
                    Defendants.     :
                                    :

## OPINION AND ORDER

Plaintiff Logan Todd brings this action claiming that Defendants violated his rights by causing his unlawful confinement. On a prior motion the Court dismissed Todd's Fourteenth Amendment procedural due process claim. Now pending before the Court are cross-motions for summary judgment on Todd's Eighth Amendment claim.  Defendant Andrew Pallito, Commissioner of the Vermont Department of Corrections ("DOC"), also filed a motion for a protective order.

For the reasons set forth below, Pallito's Motion for a Protective Order is GRANTED; Pallito's Motion for Summary Judgment is GRANTED; the remaining Defendants' Summary Judgment Motions are DENIED; and Plaintiff's Motion for Summary Judgment is DENIED.

## I.   Defendant Pallito's Motion for a Protective Order

Defendant Pallito has filed a Motion for a Protective Order to restrict Plaintiff from taking his deposition. Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order to forbid the disclosure of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

The Second Circuit recently applied this rule to shield high-ranking government officials from being deposed. *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1510, 188 L. Ed. 2d 376 (2014). In order to depose such officials under *Lederman*, "a party must demonstrate exceptional circumstances justifying the deposition — for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id*. This general rule of protection has been set out because high-ranking officials have "greater duties and time constraints than other witnesses." *Id*. (citing *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)). Other courts in the Second Circuit have applied a two-pronged test allowing high level government officials to be deposed only where: (1) the information sought is "not available from any other source" and (2) the deposition does "not hinder

2

the official's ability to perform his or her duties." *Adler v. Pataki*, 96-CV-1950, 2001 WL 1708801, at *2 (N.D.N.Y. Nov. 13, 2001); *see also Marisol A. v. Giuliani*, No. 95 CIV. 10533, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998); *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 314 (S.D.N.Y. 1991).

Plaintiff does not dispute that Pallito is a "high level government official," but argues that the deposition should nevertheless be permitted "to discover the roots of [the DOC's] culture of callous indifference and find out why so many of [Pallito's] subordinates felt comfortable leaving Plaintiff in prison based on a mistake that they were aware of." Pl.'s Resp. to Mot. for Prot. Ord. at 4.

Even if a culture of indifference did exist in the DOC, Plaintiff fails to demonstrate that Pallito would have "unique first-hand knowledge" of such a culture, or that deposing Pallito would be the only way for Plaintiff to access such information. Plaintiff also fails to demonstrate that Pallito had any "unique first-hand knowledge" of Todd's case. In fact, Pallito stated in an affidavit that he had minimal involvement in the case and that he does not "recall any unique personal involvement or knowledge concerning Plaintiff or his imprisonment." Defs.' Mot. for Prot. Order Ex. 1, ¶ 3. Defendant notes that the information sought by Plaintiff may be obtained by less intrusive means, including through written discovery or

by deposing less senior DOC officers. *Id*. at 5-6. Plaintiff does not contest this.

Plaintiff argues that high level government officials should be held accountable for constitutional violations as a matter of public policy. While this may be good policy, granting the protective order will not thwart such accountability. Other avenues remain for Plaintiff to gather evidence in making his case.

"[H]igh-ranking government officials are generally shielded from depositions." *Lederman*, 731 F.3d at 203. Because Plaintiff has not shown any exceptions under which the Court should set aside this rule, the Motion for a Protective Order is GRANTED.

## II. Defendants' Motions for Summary Judgment

### A. Standard of Review

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim. Summary judgment is granted when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). If the movant does this successfully the burden shifts, requiring the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Summary judgment is granted only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In ruling on a summary judgment motion the Court must not "weigh the evidence or resolve the issues of fact," but rather must determine "whether, after resolving all the ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 669 (D. Vt. 2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)). When parties have filed cross-motions for summary judgment, "each party's motion must be examined on its own merits, with any inferences drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010).

### B. Summary of the Facts

On July 27, 2010, Superior Court Judge Rainville ordered that Logan Todd be held in custody until he secured an approved residence, after which he was to be released on a suspended sentence. Mittimuses issued by the court, however, mistakenly stated that Todd was to serve his entire two to four-and-a-half year underlying sentence. Plaintiff's probation officer, Defendant Charles ("Chuck") Hatin, was present at the hearing and understood the sentence was to be suspended. Pl.'s Mot. Summ. J. Ex. 9 at 12-13.

Hatin approved a residence for Todd at the end of September 2010. However, on October 4, Hatin wrote in Todd's file: "learned today that the court has Mr. Todd's case . . . as being revoked and for him to serve the underlying sentence." Pl.'s Resp. to Defs.' Mot. to Dismiss Ex. 7 at 7. In response to this information Hatin spoke with two DOC supervisors and contacted a Deputy State's Attorney and the sentencing court. Pl.'s Mot. Summ. J. Ex. 9 at 22-29. The substance of these communications is not on the record. *Id*. Ex. 9 at 25-27. Hatin also instructed Todd's father to tell Todd's defense attorney, Elizabeth Hibbitts, about the problem. Hibbitts contacted Hatin's supervisor and the court. Defs.' Reply to Pl.'s Resp. to Mot. to Dismiss, Ex. 1-134. She also stated she would contact a Deputy State's Attorney and Hatin, although from the record it is not

6

clear if she did. On October 14, Hatin wrote in Todd's file: "advised that [Todd's] probation was revoked and [Todd was] ordered to serve his underlying sentence." Pl.'s Mot. Summ. J. Ex. 9 at 29. Hatin reported this to Todd's caseworker, and took no further action to secure Todd's release.

Todd remained incarcerated in Vermont until he was transferred to Arizona in June 2011. Pl.'s Consolidated Resp. to Defs.' Mot. Summ. J. (hereinafter "Pl's Cons. Resp.") Ex. 1 at 3-4. Todd sent a letter to the Vermont Governor's office, delivered August 15, 2011, claiming he was being illegally detained and asking for assistance. Todd also claims to have sent a letter to Hatin around the same time. Pl.'s Mot. Summ. J. Ex. 18. DOC Commissioner Andrew Pallito assigned the August 15 letter to Defendant Wade Johnson, DOC's Deputy Compact Administrator. Pl's Cons. Resp. Ex. C at 7-8, 18.

Johnson delegated the letter to Todd's caseworker, Jeanne Jean, and wrote to Todd on October 19, 2011, (copying Pallito) to tell him that Jean would look into his complaint. Pl.'s Mot. Summ. J. Ex. 20 at 29, Ex. 16. Jean discovered the discrepancy between the judgment and the mittimusses and said she reported this to Johnson and to Defendant Richard Byrne, Supervisor of the DOC's out-of-state unit. *Id*. Ex. 20 at 35-36.

Byrne told Jean they would follow the mittimusses. Pl's Cons. Resp. Ex. B at 37-38. The record is not entirely clear as

to whether Byrne instructed Jean to put Todd in contact with the Prisoners' Rights Office. *Id.* at 10, 28, 34. Neither Johnson nor Byrne looked into Todd's file, reported the discrepancy found by Jean to anyone else in the DOC, or took any further action. *Id.* Ex. B at 12, 21, 39, 49-50; Ex. C at 13-14, 18-20.

On November 16, 2011, Todd called the Prisoner's Rights Office, possibly at the prompting of Jean. However, he had apparently contacted the Prisoners' Rights Office before this. Defs.' Mot. Summ. J. Ex. 12 at 84. After filing a motion for a writ of habeas corpus, the Prisoners' Rights Office secured Todd's release at a December 29 hearing. An Assistant Attorney General represented the DOC at the hearing and did not contest the motion, aside from suggesting that Judge Rainville's July 27 sentence was ambiguous. Defs.' Mot. Summ. J. Ex. 19 at 3-5.

### C. Eighth Amendment Claim

A successful Eighth Amendment claim "must show: '(1) a deprivation that is objectively, sufficiently serious that [the plaintiff] was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).

8

## 1. A Deprivation Denying the Minimal Civilized Measure of Life's Necessities

Freedom from unlawful confinement is among the most basic and important individual rights enjoyed in this country. All punishments, including imprisonment, are circumscribed by the Eighth Amendment. *Trop v. Dulles*, 356 U.S. 86, 100 (1958); *Hutto v. Finney*, 437 U.S. 678, 685 (1978). Confining a person in prison for a significant period of time after he should have been released may be a sufficiently serious deprivation to constitute an Eighth Amendment violation. *See, e.g., Sample v. Diecks*, 885 F.2d 1099, 1099 (3d Cir. 1989) (detaining a prisoner nine months beyond release date gives rise to Eighth Amendment violation); *Haygood v. Younger*, 769 F.2d 1350, 1353 (9th Cir. 1985) (detention of five years beyond termination of sentence is an Eighth Amendment violation). In this case, Todd was held for fifteen months beyond the date on which he should have been released under Judge Rainville's orders.

Defendants argue that they relied on the mittimusses, that Todd was released before the maximum (and minimum) release date set out in the mittimusses, and that Todd was therefore not held beyond his term. Defs.' Mot. Summ. J. at 9-10. From this, they argue that there can be no Eighth Amendment violation.

In *Hill v. U.S. ex rel Wampler*, 298 U.S. 460, 465 (1936), another case where the mittimus added conditions to the sentence

spoken by the judge, Justice Cardozo wrote for a unanimous Court that "a warrant of commitment departing in matter of substance from the judgment back of it is void . . . . If the judgment and sentence do not authorize his detention, no 'mittimus' will avail to make detention lawful." The Second Circuit cited *Wampler* in holding that a term of post-release supervision could not be enforced by the Department of Corrections because, even though mandatory by statute, it had not been included in the terms of the original sentence. *Earley v. Murray*, 451 F.3d 71, 75-76 (2d Cir. 2006). The Second Circuit has also held that "[w]here an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999). These cases make clear that an extended detention cannot be justified by reliance on a mittimus that is at odds with a judgment.

Defendants submit that there can generally be no Eighth Amendment violation where a prisoner is released prior to his maximum possible release date. Defs.' Mot. Summ. J. at 10. The only court Defendants cite to even consider this possibility, however, stopped short of answering the question and decided the case on other grounds. *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007). Elsewhere, courts look not at whether

a prisoner was released beyond his maximum possible release
date, but rather at whether a prisoner was detained after he
should have been released. *See, e.g., Schultz v. Egan*, 103 F.
App'x 437, 439 (2d Cir. 2004) (citing a Federal Magistrate's
Report that "incarceration beyond one's release date" could give
rise to an Eighth Amendment claim); *Sample*, 885 F.2d at 1108
("the concatenation of sentencing pronouncements and parole
board determinations meant that [the plaintiff] should have been
released"); *Koelsch v. County of Lancaster*, CIV. A. 11-5681,
2012 WL 4459799, at *4 (E.D. Pa. Sept. 25, 2012) (holding an
Eighth Amendment claim was cognizable where a prisoner was
detained after he should have been released on parole, even
before the termination of his maximum possible sentence).

    Once Todd's sentence was announced on July 27, 2010, the
DOC had no discretion regarding his release aside from approving
a residence. Such approval came at the end of September 2010,
but Todd was held in prison until the end of December 2011. This
is clearly "imprisonment beyond one's term" and a deprivation
under the Eighth Amendment.

## 2. Deliberate Indifference

    Under the second prong of *Jabbar*, Defendants violated the
Eighth Amendment if they were deliberately indifferent to Todd's
confinement. 683 F.3d at 57. Deliberate indifference, the issue
at the heart of this case, involves "a state of mind more

blameworthy than negligence" but "something less than acts or omissions for the very purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In unlawful confinement cases, an official is deliberately indifferent when (1) he or she knew of the prisoner's problem and associated risk of unwarranted punishment; (2) he or she failed to act or took ineffectual actions; and (3) there was a causal connection between the insufficient response and the unjustified detention. *Sample*, 885 F.2d at 1110. The official's job description or role in prison administration is also relevant. *Id*. For example, in *Sample* a senior records officer was indifferent because he knew of a possible unlawful confinement and took no action, even though he "was in the best position either to solve the problem himself or to know who could." *Id.* at 1112. The Commissioner of the State Bureau of Corrections was not deliberately indifferent, however, because he was neither "responsible for" nor "the 'moving force [behind]'" the tort. *Id*. at 1117 (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)).

Deliberate indifference turns on questions of fact. *See Farmer*, 511 U.S. at 842. The Court considers whether each Defendant was deliberately indifferent according to facts relevant to his unique knowledge, acts, and role in the DOC. In

doing so the Court does not "weigh the evidence or resolve the issues of fact." *City of Burlington*, 190 F. Supp 2d at 669.

Regarding Commissioner Pallito, the Second Circuit has set out factors determining whether a defendant in a supervisory role in a Section 1983 claim may be liable based on "personal involvement:"

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts , or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

The Court assumes for purposes of this motion that Pallito personally received Todd's August 15 letter and Johnson's October 19 letter, and therefore knew of Todd's complaint. Pallito forwarded Todd's letter to Johnson for action, but did not follow up on Todd's case with either the Governor's office or anyone in the DOC. However, there is no indication that the DOC Commissioner should have done more. Suggestions by the Assistant Attorney General at Todd's habeas hearing that the July 27 sentence was ambiguous do not substantiate Plaintiff's claim that Pallito contested Todd's release. Pallito's admission

that there are many prisoner complaints and Todd's prolonged
confinement are alone insufficient to demonstrate a policy or
custom of unconstitutional practices. *See Green v. City of New
York*, 465 F.3d 65, 81 (2d Cir. 2006). Pallito may have had some
limited involvement in this matter and may have taken some
limited action. However, even construing the facts in favor of
the Plaintiff, no reasonable jury could find that Pallito was
deliberately indifferent or that he meets any of the other *Colon*
factors for liability. Pallito's Motion for Summary Judgment is
therefore granted.

The parties dispute genuine issues of material fact as to
whether the remaining Defendants were deliberately indifferent.
These facts include when and to what extent Defendants' knew of
Todd's risk of unwarranted confinement, precisely what actions
each Defendant took, and whether these actions were sufficient
given each Defendants' role in the DOC. For example, the record
is unclear regarding what information passed between Hatin and
the court, the Deputy State's Attorney, and other parties after
Hatin initially discovered that Todd would not be released. The
substance of these communications has a direct bearing on
whether Hatin's efforts to secure Todd's release were
sufficient. After assigning Todd's case to Jean it is not clear
whether Johnson, based on his role in the DOC, should have
played a more active role in investigating Todd's complaint. It

14

is also unclear whether Byrne should have taken further action such as examining Todd's core file or reporting Todd's situation to anyone else.

Because a reasonable jury could find facts demonstrating Hatin, Byrne, and Johnson were deliberately indifferent, their Motions for Summary Judgment are denied.

### D. Qualified Immunity

Even if Todd's Eighth Amendment claims have merit, Defendants assert that they are protected by qualified immunity "because it was not clearly established that Todd's Eighth Amendment rights were violated" and "Defendants' actions to facilitate Todd's release were objectively reasonable." Defs.' Mot. Summ. J. at 19. Plaintiff claims qualified immunity should not apply because Todd "had a clearly defined right not to be subjected to illegal/excessive incarceration," Defendants knew of that right and of the conflict between the suspended sentence and mittimusses, and Defendants were in a position to remedy Todd's situation but failed to do so. Pl.'s Mot. Summ. J. at 10.

Qualified immunity is "an affirmative defense as to which the defendants have the burden of proof." *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). To be shielded by qualified immunity, Defendants must show either the plaintiff has not suffered a violation of his rights or that the violated right

was not clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established, and qualified immunity does not apply, if (1) the right in question was defined with reasonable specificity, (2) its existence was supported by case law, and (3) given the existence of the right "a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)). This analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). The first two elements of this analysis are questions of law, while objective reasonableness is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004). Disputed material facts as to reasonableness should be submitted to a jury prior to the Court making a final determination on qualified immunity. *Id*.

Regarding the first element, the right in question is defined as the right not to be imprisoned for a significant period of time after one should have been released. This right was violated when Todd was held beyond his court-ordered sentence.

Regarding the second element, Defendants assert that the right in question has not been clearly defined by "binding precedent." Defs.' Mot. Summ. J. at 20. However, the Second Circuit has held that "[e]ven if this Court has not explicitly held a course of conduct to be unconstitutional, we may nonetheless treat the law as clearly established if decisions from this or other circuits "'clearly foreshadow a particular ruling on the issue.'" *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir.1997)); *see also Scott*, 616 F.3d at 105 (explaining that courts may look to other circuit courts of appeals to determine if a right is clearly established).

The Second Circuit has "suggested . . . and other courts within and without [the Second] Circuit have held, that detention beyond that authorized by law may violate the Eighth Amendment." *Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012) (citing *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993); *Sample*, 885 F.2d at 1108-10; *Haygood*, 769 F.2d at 1354-55; *Rivera v. Carroll*, No. 07-civ-7847 (RJS), 2009 WL 2365240, at *6-7 (S.D.N.Y. Aug. 3, 2009)). The courts also make clear that officials have a duty to act, commensurate with their positions, when they have reason to believe someone may be unlawfully confined. *See, e.g., Sample*, 885 F.2d at 1112; *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th

17

Cir. 1989); *Rivera*, 2009 WL 2365240, at *5; *Brown v. Coughlin*, 704 F. Supp. 41, 45 (S.D.N.Y. 1989). Finally, there is clear precedent that a mistaken mittimus does not trump a judgment. *Wampler*, 298 U.S. at 465; *Earley*, 451 F.3d at 75-76.

Under the third element, although the right is defined with reasonable specificity and supported by case law, Defendants are still entitled to qualified immunity unless a reasonable official in their positions "would understand that what he is doing violates that right." *Shechter*, 79 F.3d at 270-71.

With respect to Commissioner Pallito, even if the Court were to find that his conduct violated Todd's rights, the Court could also conclude that it was objectively reasonable for him to believe that this conduct was lawful. Even if Plaintiff's Eighth Amendment claim against him was successful, Pallito would therefore be immune from suit on qualified immunity grounds. *Pearson*, 555 U.S. at 237.

Reasonableness is less clear regarding Hatin, Byrne, and Johnson. What these Defendants knew about Todd's situation, the exact nature of each Defendant's acts, and their precise duties and roles are all disputed factual questions. The Court cannot determine whether they acted reasonably as a matter of law while these factual questions are unresolved. Summary judgment on the basis of qualified immunity is therefore denied.

### III.   Plaintiff's Motion for Partial Summary Judgment[1]

As discussed above, a reasonable jury could not find that Pallito was deliberately indifferent or otherwise liable for an Eighth Amendment violation against Todd. Plaintiff's Motion for Summary Judgment against Pallito is therefore denied.

Whether Defendants were deliberately indifferent turns on questions of fact that remain disputed for the reasons discussed above. Viewing the facts in the light most favorable to Defendants, a reasonable jury could find that their actions were not deliberately indifferent. Alternatively, a jury could find facts demonstrating that Defendants acted in a manner sufficiently reasonable for qualified immunity to apply. Because there are disputed factual questions, Plaintiff's Motion against the remaining Defendants is denied.

Dated at Burlington, in the District of Vermont, this 23rd day of October, 2014.


/s/ William K. Sessions III
William K. Sessions III
District Court Judge

---

[1] It is not clear why the motion is "partial," as Plaintiff moves for the Court to find in his favor on the Eighth Amendment claim against the four named Defendants, and no other claim is set out in the Amended Complaint.